UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEIGHBORLY CAPITAL COMPANY<br>d/b/a HUMANITY CASH and<br>NING-FENG WANG, | )<br>)<br>) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 3:23-cv-30017-KAR |
| | ) |
| SCHUMACHER CENTER FOR A NEW<br>ECONOMICS, SUSAN WITT, and<br>BERKSHARES, INC., | )<br>)<br>) |
| | ) |
|     Defendants. | ) |
| | ) |

MEMORANDUM AND ORDER ON DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
(Dkt. No. 18)

The defendants Schumacher Center for a New Economics ("Schumacher Center"), Susan

Witt ("Witt"), and Berkshares, Inc. (collectively, "Defendants") have moved to dismiss the

complaint filed by the plaintiffs Neighborly Capital Company d/b/a Humanity Cash ("Humanity

Cash") and Ning-Feng Wang ("Wang") (collectively, "Plaintiffs") on the ground that Plaintiffs'

claims are subject to and barred by a binding arbitration clause and otherwise fail to state a claim

upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 18). Plaintiffs

filed a limited opposition arguing that, while they agree that the claims brought by Humanity

Cash against Schumacher Center and BerkShares, Inc., must be arbitrated, Defendants have not

shown that the claims brought by Wang and against Witt – neither of whom are signatories to the

contract containing the arbitration provision – are subject to arbitration (Dkt. No. 25). Plaintiffs

further maintain that the gateway issue of arbitrability of those claims must be resolved by an

arbitrator and that this court should stay this proceeding pending resolution of that issue (Dkt.

No. 25).  In reply, Defendants assert that dismissal is appropriate rather than a stay because all issues, including the arbitrability of the claims brought by Wang and against Witt, must be resolved by arbitration (Dkt. No. 28).  For the reasons that follow, the court denies Defendants' motion to dismiss and stays this matter pending a decision by the arbitrator on the issue of the arbitrability of the claims brought by Wang and against Witt.[1]

## I.     Background[2]

In 2006, Schumacher Center, a Massachusetts 501(c)(3) not-for-profit corporation, debuted a community currency fully backed by U.S. dollars and intended to foster the local economy in Berkshire County, Massachusetts, which it called BerkShares (Dkt. No. 1 at ¶¶ 20, 26).  Since inception, more than $10 million worth of BerkShares have been issued (Dkt. No. 1 at ¶¶ 26-27).  Historically, BerkShares could be obtained in the form of paper notes at participating banks, including Salisbury Bank, Lee Bank, and Pittsfield Cooperative Bank, in exchange for an equivalent amount of U.S. dollars (Dkt. No. 1 at ¶ 28).  The funds would then be deposited into a customer holding account held by BerkShares, Inc., a Massachusetts not-for-profit corporation that was separate and distinct from Schumacher Center on paper but was *de facto* controlled by it (Dkt. No. 1 at ¶¶ 22, 28, 30).  Holders of Berkshares could spend them with participating merchants, who could redeem them for U.S. dollars (Dkt. No. 1 at ¶ 28).

In 2020, Wang, who had professional experience in the digital currency industry, reached out to Schumacher Center about the possibility of creating a digital version of BerkShares that

---

[1] The parties filed a joint status report on March 18, 2024, indicating that the arbitrator is awaiting a decision by this court on the instant motion before making a determination on the arbitrability issue (Dkt. No. 42).

[2] For purposes of ruling on Defendants' motion, the court accepts all facts alleged in Plaintiffs' complaint as true and draws all reasonable inferences in Plaintiffs' favor.  *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).

would utilize a public blockchain ledger, thereby supplanting the credit card interchange networks and saving merchants money on credit card interchange fees running as high as 3-4% per transaction (Dkt. No. 1 at ¶¶ 31, 33, 41-42).  In the fall of that year, Wang met with Witt, the Executive Director of Schumacher Center and Treasurer of the Board of Directors of both Schumacher Center and BerkShares, Inc., to discuss a digital BerkShares project, which the parties then began to develop in the winter and spring of 2021 (Dkt. No. 1 at ¶¶ 21, 34-35, 123).  During this time, Wang began to design a regulatory structure in conjunction with Dechert LLP, which was acting as *pro bono* outside counsel for Shumacher Center, and to pursue potential funding sources for the project (Dkt. No. 1 at ¶¶ 35, 43-45, 48).

In May 2021, Wang founded Humanity Cash as a Delaware public benefit corporation committed to developing digital community currencies, starting with the digital BerkShares project (Dkt. No. 1 at ¶¶ 2, 36).  Thereafter, on June 2, 2021, Humanity Cash, Schumacher Center, and BerkShares, Inc., entered into an agreement to formalize and implement the digital BerkShares project (hereinafter, "the Agreement"), under which Humanity Cash was to develop the necessary software, including a mobile application; assist with user adoption and education, as well as marketing and public relations; and formulate a regulatory compliance strategy for digital BerkShares (Dkt. No. 1 at ¶¶ 37-38; Dkt. No. 19-1 at 4).[3]  Schumacher Center was to

---

[3] While "a court [ruling on a Rule 12(b)(6) motion] ordinarily may only consider facts alleged in the complaint and exhibits attached thereto, or else convert the motion into one for summary judgment," *Douglas v. Hirshon*, 63 F.4th 49, 57 (1st Cir. 2023) (quoting *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013)), there are "narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to the plaintiffs' claim; or for documents sufficiently referred to in the complaint." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) (citations omitted).  The Agreement, which Defendants have filed in support of their motion to dismiss (Dkt. No. 19-1), fits within these narrow exceptions, and, therefore, the court will consider it.

guide marketing and public relations, as well as local fundraising to support marketing, including launching a give-a-way program, while BerkShares, Inc., was to guide user adoption and education and provide feedback on user experience and design (Dkt. No. 1 at ¶ 38; Dkt. No. 19-1 at 4).  The Agreement did not provide for any form of monetary compensation, instead noting Humanity Cash's wish "to develop the technology to take BerkShares digital and then … sell or license or otherwise distribute that technology to other community groups" (Dkt. No. 19-1 at 2).  Regarding capital contributions, the Agreement provided that Humanity Cash would "provide capital and development services, as well as other ancillary services to launch the digital BerkShares pilot," while Shumacher Center and Berkshares, Inc., would provide "in-kind support" (Dkt. No. 19-1 at 4).  The Agreement contains a mandatory arbitration clause providing that the parties "submit any and all disputes arising out of or in connection to this Collaboration Agreement … to binding arbitration …. [to] be conducted in the state of New York in accordance to the rules of JAMS …. [under] applicable and governing Federal law as well as the laws of the state of New York" (Dkt. No. 19-1 at 7).

According to Wang, Humanity Cash held up its end of the bargain, and, throughout the summer, fall, and winter of 2021 leading into 2022, contributed significant resources to designing digital Berkshares and the associated mobile application, as well as drafting bank agreements in conjunction with Schumacher Center's *pro bono* financial services outside counsel and students in a Harvard Law School clinical program, all with the participation and involvement of Schumacher Center staff, including Witt (Dkt. No. 1 at ¶¶ 53-61).  In addition, Wang devoted time and energy to identifying and pursuing funding opportunities, helping Schumacher Center secure at least $460,000 in grant funding to be used for marketing, user adoption, and program support (Dkt. No. 1 at ¶¶ 64-68).  All of these efforts paid off; on March

21, 2022, digital BerkShares became available in the Berkshires region and the mobile application launched on the Apple App and Google Play stores (Dkt. No. 1 at ¶¶ 39, 80).

Plaintiffs maintain that while Humanity Cash worked diligently to meet its contractual obligations, Schumacher Center did not.  Despite presenting a marketing plan for digital BerkShares in the fall of 2021, Schumacher Center never implemented it even in the face of Wang's repeated inquiries (Dkt. No. 1 at ¶¶ 62-63, 88-89).  Moreover, following the launch, Witt began to raise concerns about regulatory requirements associated with money services businesses and make demands that were not contemplated by the Agreement.  In particular, Witt requested additional review of potential exposure to money services businesses regulatory requirements with a new law firm serving as outside counsel, and, along with another member of Schumacher Center's Board, Paul Fletcher-Hill, requested that Humanity Cash assume responsibility for the project's money services registration requirements to the extent such registration became necessary in the future (Dkt. No. 1 at ¶¶ 82-85).  These concerns were unfounded because Digital BerkShares were designed using a "prepaid closed loop model," which allowed Schumacher Center and BerkShares, Inc, to be exempt from the Bank Secrecy Act and attendant regulatory requirements, such as registration with FinCEN as a money services business (Dkt. No. 1 at ¶¶ 70-77).  Nevertheless, during a meeting on May 18, 2022, Witt indicated that Schumacher Center and BerkShares, Inc., would not provide marketing support until their money services business concerns were resolved and unless Humanity Cash developed additional features not contemplated by the Agreement (Dkt. No. 1 at ¶ 90).

Wang, in response, suggested that the parties' agreement would have to be amended to provide compensation for Humanity Cash's provision of future development and infrastructure services; later, she provided a draft of a new services contract, which outlined the conditions of

Humanity Cash's registering as a money services business and left open for discussion Humanity Cash's estimated cost of services going forward (Dkt. No. 1 at ¶¶ 93, 102-103).  During discussions with Witt and Fletcher-Hill, however, Wang and a colleague, Andy Kalambi ("Kalambi"), advised them that it would cost Humanity Cash $84,000 annually to maintain the project's infrastructure, not inclusive of new development costs; alternatively, they suggested that BerkShares, Inc., could buy the digital BerkShares mobile application for $157,000, which represented a significant discount on the cost of development (Dkt. No. 1 at ¶¶ 109-110).  From the time the issue of compensating Humanity Cash arose on May 18, 2022, throughout the summer and into the fall of that year, Schumacher Center and BerkShares, Inc., accepted Humanity Cash's services knowing that Humanity Cash expected to formalize a paid services contract, which never happened (Dkt. No. 1 at ¶¶ 105, 112-113).

In or around October 2022, Wang learned that Schumacher Center had deposited only $20,000 of $60,000 in donor funds that were to be used to fund a BerkShares token giveaway into customer holding accounts (Dkt. No. 1 at ¶¶ 51-52, 141-142).  This meant that only $20,000 of the tokens were backed by U.S. dollars (Dkt. No. 1 at ¶ 142).  Wang and Kalambi met with members of the boards of Schumacher Center and BerkShares, Inc., including Witt, on October 17, 2022 (Dkt. No. 1 at ¶¶ 145-146).  During the meeting, Wang was advised that Schumacher Center could not afford Humanity Cash's $157,000 buyout offer and instead could pay $25,000 at most.  Witt and another member of the board threatened to unilaterally shut down the digital BerkShares mobile application if Wang did not accept the offer, which could lead to a disorderly shutdown process (Dkt. No. 1 at ¶¶ 147-148, 154).  Wang advised Schumacher Center that Humanity Cash could no longer be associated with the digital BerkShares project given the

compliance breach but that she needed time to formulate a response to Schumacher Center's offer (Dkt. No. 1 at ¶¶ 156, 158).

Sometime during the fall of 2022, Witt had a phone conversation with Martin Kirk of the NoVo Foundation, a prospective grant donor on an unrelated community currency project in Kingston, New York, during which Witt falsely accused Wang and Humanity Cash of coercive and threatening conduct toward Schumacher Center (Dkt. No. 1 at ¶¶ 12, 159-161, 166). According to Plaintiffs, these false accusations resulted in Kirk withdrawing a $72,000 grant to Humanity Cash from NoVo Foundation (Dkt. No. 1 at ¶¶ 165, 168).

On November 4, 2022, Schumacher and BerkShares, Inc., sent a letter terminating the Agreement with Humanity Cash and demanding that Humanity Cash turn over ownership and control of its intellectual property and project-related technology, including the entire BerkShares digital platform (Dkt. No. 1 at ¶ 170).  When Humanity Cash refused, Shumacher Center abruptly and without informing Wang shut down the digital BerkShares mobile application on November 17, 2022, retaining substantially all of the donor and grant funding that was earmarked for the digital BerkShares project (Dkt. No. 1 at ¶ 172-173, 178).  Humanity Cash, however, kept the mobile application running on its servers through the end of the month at its own expense to protect digital BerkShares users (Dkt. No. 1 at ¶ 174).

Plaintiffs filed this action on February 14, 2023, asserting eleven causes of action consisting of the following claims:  Humanity Cash against Shumacher Center and BerkShares, Inc., for unfair trade practices in violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11 (Count I), breach of contract (Count II), breach of the implied covenant of good faith and fair dealing (Count III), and Unjust Enrichment (Count VII); Humanity Cash against all Defendants for breach of implied contract (Count IV); and Humanity Cash and Wang against all Defendants for

quantum meruit (Count V), misrepresentation (Count VI), defamation per se (Count VIII), defamation (Count IX), business disparagement (Count X), and intentional interference with prospective business advantage (Count XI).

## II.    **Discussion**

Defendants moved to dismiss Plaintiffs' complaint with prejudice on the grounds that Plaintiffs' claims are subject to and barred by a binding arbitration clause and otherwise fail to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. Nos. 18-19). Plaintiffs filed a limited opposition (Dkt. No. 25) agreeing that the claims brought by Humanity Cash against Schumacher Center and Berkshares, Inc., all of which entities are parties to the Agreement, are subject to the binding arbitration provision therein, but disputing that the claims brought by Wang and against Witt, who are not parties to the Agreement, are similarly subject to arbitration. *See, e.g., Next Step Med. Co., Inc. v. Johnson & Johnson Int'l.*, 619 F.3d 67, 71 (1st Cir. 2010) ("Generally speaking, 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986))). Plaintiffs stipulate, however, that the threshold question of arbitrability as to those claims must be resolved by the arbitrator, and they represent that they will submit the question of arbitrability to the arbitrator at the outset of the proceedings they initiated with JAMS in New York pursuant to the rules of that forum. Plaintiffs ask that this court stay the case pursuant to the Federal Arbitration Act, 9 U.S.C. § 3, to allow the arbitrator to resolve the arbitrability issue. Withal, should the court opt to dismiss the case, Plaintiffs request that it do so without prejudice, given that a dismissal with prejudice could preclude Plaintiffs from pursuing in court any claims that the arbitrator determines are not subject to arbitration and could interfere with their ability to enforce an arbitration award through post-arbitration court

proceedings.  In their reply, Defendants continue to seek dismissal with prejudice, arguing that Plaintiffs failed to file an appropriate motion for a stay and that this court should dismiss the case rather than stay it in any event because all issues, including the arbitrability of the claims involving Wang and Witt, are arbitrable (Dkt. No. 28).  Defendants further maintain that, should this court stay the matter and the arbitrator determine that Wang's claims against Witt are not arbitrable, the claims should be dismissed for failure to state a claim, which Plaintiffs did not dispute in their opposition.  At oral argument on Defendants' motion, Defendants agreed on the record that dismissal, if granted, should be without prejudice at this time.

Written arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-301.  "The FAA institutes 'a liberal federal policy favoring arbitration agreements' thus 'establish[ing] … as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"  *Peterson v. Binnacle Capital Servs. LLC*, 364 F. Supp. 3d 108, 113 (D. Mass. 2019) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  "'[G]enerally speaking, the presumption in favor of arbitration applies to the resolution of scope questions ….  A scope question arises when the parties have a contract that provides for arbitration of some issues and it is unclear whether a specific dispute falls within that contract."  *Id.* at 117 (quoting *Paul Revere Variable Annuity Ins. Co. v. Kirschhofer,* 226 F.3d 15, 25 (1st Cir. 2000)).  "[E]xcept where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter."  *Id.* (alteration in original) (quoting *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010)).  Here, the parties agree that, by incorporating the JAMS arbitration rules into the Agreement, the contracting parties delegated the question or arbitrability to the arbitrator.  *See*

JAMS Rules, Rule 11(b) ("Jurisdictional and arbitrability disputes, including … who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.").  This court agrees that the threshold question of the arbitrability of the claims brought by Wang and against Witt is for the arbitrator to decide.  *See Tannatt v. Varonis Sys.*, Inc., CIVIL ACTION NO. 18-12589-JGD, 2019 WL 830482, at *5 (D. Mass. Feb. 21, 2019) (holding that the question of arbitrability had been clearly and unmistakably delegated to the arbitrator based on the arbitration provision's explicit incorporation of the JAMS Employment Arbitration Rules, which have an identical provision regarding arbitrability determinations).

The remaining question before the court is whether this proceeding should be dismissed without prejudice or stayed pending the arbitrator's determination on the arbitrability issue.  The Federal Arbitration Act provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement …."  9 U.S.C. § 3.  However, "[t]he First Circuit has held that '[w]here one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the lawsuit, if all claims asserted in the case are found to be arbitrable.  If some claims are non-arbitrable, the district court cannot dismiss the entire case.'"  *Peterson*, 364 F. Supp. 3d at 118 (quoting *Next Step Medical Co.*, 619 F.3d at 71).

Defendants maintain that the court can and should dismiss the case instead of staying it because all of the *issues* before the court, including the arbitrability of the claims involving Wang and Witt, are arbitrable, even if the arbitrability of those *claims* has yet to be decided.  The

court disagrees.  The First Circuit has clearly premised the power of the district court to dismiss a lawsuit where one side is entitled to arbitration of a claim on a finding that "all *claims* asserted in the case are … arbitrable."  *Next Step Medical*, 619 F.3d at 71 (emphasis added) (citing *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 & n.21 (1st Cir. 1998); 9 U.S.C. § 3. Here, there has been no finding as to whether the claims brought by Wang and against Witt are arbitrable and, as discussed above, that decision must be made by an arbitrator.  "Because the threshold issue of whether the claims asserted [by Wang and against Witt] are subject to arbitration must be resolved by the arbitrator, it is not yet clear whether all claims in this case will be subject to arbitration."  *Gray v. Schmidt Baking Co.*, Civil Action No. 22-cv-00463-LKG, 2023 WL 2185778, at *11 (D. Md. Feb. 23, 2023).  It is possible that the arbitrator could find some claims non-arbitrable, in which case this court would be without authority to dismiss the case.  *Next Step Medical*, 619 F.3d at 71.  *See also Bosse v. New York Life Ins. Co.*, 992 F.3d 20, 32 (1st Cir. 2021) (directing that "[o]n remand, the district court *must* enter an order compelling arbitration *and* issue a stay upon sending the matter to the arbitrator" where the court had erred in determining that the question of whether the plaintiff's claims fell within the arbitration clause of the relevant agreement was for it to resolve and not the arbitrator (emphasis added)).

Moreover, the decision whether to stay the proceedings or dismiss, even if, as Defendants argue, dismissal would be permissible in these circumstances, is left to the discretion of the trial court.  "Under the circumstances presented, the [c]ourt w[ould] stay proceedings pending the arbitrability determination by the arbitrator [in any event]."  *Fairfield v. DCD Auto. Holdings, Inc.*, Case No. 22-cv-11977-DJC, 2023 WL 4186191, at *4 (D. Mass. June 26, 2023) (citing *McKenzie v. Brannan*, 496 F. Supp. 3d 518, 540 (D. Me. 2020) (finding that a stay was "more sensible" given the possibility that the arbitral body could conclude that the dispute was not

arbitrable), *vacated on other grounds*, 19 F.4th 8 (1st Cir. 2021)).  Finally, the court will not consider Defendants' argument that Plaintiffs' claims brought against Witt are subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) because the issue of the sufficiency of those claims will not be ripe in this forum unless and until the arbitrator determines that they are not subject to arbitration.

### III.    <u>Conclusion</u>

For the above-stated reasons, Defendant's motion to dismiss for failure to state a claim (Dkt. No. 18) is DENIED, and this matter is STAYED pending the arbitrator's decision in the JAMS proceeding on the arbitrability of the claims brought by Wang and against Witt.  The parties are ordered to notify this court of the decision of the arbitrator as to the question of arbitrability within 14 days thereof.

It is so ordered.

/s/ Katherine A. Robertson
KATHERINE A. ROBERTSON
United States Magistrate Judge

DATED:  March 19, 2024